



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PAT HUDDLESTON II, Receiver for Coadum Advisers, Inc., Mansell Capital Partners III, LLC, Coadum Capital Fund 1, LLC, Coadum Capital Fund II, LP, Coadum Capital Fund III, LP, and Mansell Acquisition Company, LP,<br><br>Plaintiff,<br><br>v.<br><br>GRAFTON ENTERPRISES MIDWAY LLC and BENJAMIN HOWARD,<br><br>Defendants. | CIVIL ACTION<br><br>FILE NO.<br><br>1 09-CV-2799 |

## COMPLAINT

Plaintiff Pat Huddleston II, as the court-appointed Receiver for Coadum Advisers, Inc., Mansell Capital Partners III, LLC, Coadum Capital Fund 1, LLC, Coadum Capital Fund II, LP, Coadum Capital Fund III, LP and Mansell Acquisition Company, LP, ("Receiver") files this Complaint

1

against Defendants Grafton Enterprises Midway LLC and Benjamin Howard, showing this Court the following:

## PARTIES, JURISDICTION, AND VENUE

1. On January 3, 2008, the United States Securities and Exchange Commission ("SEC") filed an enforcement action in United States District Court for the Northern District of Georgia styled *SEC v. Coadum Advisors, Inc., Mansell Capital Partners III, LLC, Coadum Capital Fund 1, LLC, Coadum Capital Fund II, LP, Coadum Capital Fund III, LP, and Mansell Acquisition Company, LP*, Civil-Action-Number 1:08-CV-0011-ODE.

2. On the same date, the Court appointed Plaintiff to serve as Receiver for Coadum Advisers, Inc. ("Coadum"), Mansell Capital Partners III, LLC ("Mansell"), Coadum Capital Fund 1, LLC ("Coadum 1"), Coadum Capital Fund II, LP ("Coadum 2"), Coadum Capital Fund III, LP ("Coadum 3"), and Mansell Acquisition Company LP ("MAC"), and authorized him to assert claims on behalf of the Receivership Entities.

3. Plaintiff Receiver is a resident of Cobb County, Georgia.

4. Defendant Grafton Enterprises LLC ("Grafton") is a Texas corporation whose principal place of business is in Hurst, Texas. It may be

served with process by and through its Registered Agent: Janine A. Howard at 320 Oakwood Drive, Hurst, Texas 76053.

5. Defendant Benjamin Howard ("Howard") is the sole Director and Manager of Grafton.

6. Defendant Howard is a resident of the State of Texas and may be served with process at his residence also at 320 Oakwood Drive in Hurst, Tarrant County, Texas 76053.

7. Defendants negotiated a land purchase in Utah with Thomas Repke, a Director of Mansell, on behalf of Mansell.

8. This is an action brought by a federally appointed Receiver in the Receivership Court. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 754, 1692, and 1331.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as the Defendants conducted business with the Receivership Entity and a substantial part of the Receivership assets are located in the Northern District of Georgia.

## **Background**

10. Repke and James Jeffrey created Coadum on October 19, 2005 to serve as the general partner to various limited partnership offerings, including Coadum 1, Coadum 2, and Coadum 3.

11. Mansell was created on August 31, 2007 and served as the general partner to the MAC offering.

12. Coadum and all of the Receivership Entities, including Mansell, operated as a Ponzi scheme; an investment scheme where investors are paid supposed profit distributions from the investments of newly-attracted investors.

13. Coadum fraudulently raised $38 million from investors who purchased limited partnership interests through Coadum 1, Coadum 2, Coadum 3, and Mansell.

14. Mansell sought to invest in real estate and wanted to purchase 62.5 acres of land in Midway, Utah.

15. This land was owned by Harbor Real Estate Fund, LP ("Harbor").

16. For reasons unknown, Mansell attempted to use a straw buyer to make the purchase.

17. Mansell decided to use the Defendants as the straw buyer.

18. On May 21, 2007, Mansell contracted with the Defendants to negotiate with Harbor and purchase the land on its behalf through a signed, written agreement.

19. Per the contract, Mansell would pay Defendant Grafton $25,000 for its services as straw buyer, regardless of whether the land was successfully purchased.

20. Half of the $25,000 was to be paid when the contract was signed, and the other half was to be paid by June 21, 2007 or at the closing of the property.

21. Mansell also agreed to pay Defendant Grafton an additional $175,000 as commission when the deal closed.

22. The contract states that the $175,000 commission payment was contingent upon the land deal successfully closing and Mansell receiving title to the property.

23. This contract was never modified in writing.

24. On May 21, 2007, Mansell made a $12,500 payment to Defendant Grafton.

25. On July 13, 2007, Mansell wired Defendant Grafton $70,000 as an advance on its commission.

26. On August 1, 2007, Mansell wired an additional $150,000 to Defendant Grafton as an advance on its commissions and further payment for services.

27. In total, Mansell paid Defendant Grafton $232,500, excluding earnest money paid to Harbor by Defendant Grafton.

28. Defendant Grafton never successfully closed the land deal with Harbor, but ultimately received at least $207,500 more than the $25,000 for services provided in the contract.

29. The contract stipulated that Defendant Grafton was only to receive an additional sum of $175,000 upon a successful closing of the purchase property.

30. The Receiver has already recovered $15,803.30 from Defendant Grafton's Washington Mutual bank account.

31. The Receiver demands return of the remaining $191,696.67 Defendants have unlawfully retained in breach of the contract which only entitled Defendant Grafton to $25,000.

## COUNT I

### Breach of Contract

32. The allegations of Paragraphs 1 through 31 are incorporated into this Count as if fully set forth herein.

33. Defendants executed a contract providing that Grafton only receive a commission when the Utah land deal successfully closed.

34. The land deal never closed.

35. Defendants retained commission payments and other payments sent by Mansell in violation of this contract.

36. As a result of Defendant's actions, Mansell has lost $191,696.67.

37. This wrongful retention of receivership funds directly and proximately injured the Receivership Entities.

38. As a direct and proximate result of payments kept by Defendants the Receivership Entities suffered damages.

## COUNT II

### Unjust Enrichment

39. The allegations of Paragraphs 1 through 38 are incorporated into this Count as if fully set forth herein.

40. Defendants received $232,500 in defrauded investor funds from Mansell.

41. Mansell had no legal or contractual obligation to pay Defendants $191,696.67 of the $232,500 they received.

42. Mansell paid Defendants advances on commissions and fees with the expectation that the land deal would successfully close.

43. It is unjust for Defendants to retain the commissions paid to them by Mansell because the land deal did not close.

44. Defendants have been unjustly enriched by the receipt of these funds.

45. This wrongful retention of receivership funds directly and proximately injured the Receivership Entities.

46. As a direct and proximate result of payments kept by Defendants the Receivership Entities suffered damages.

## COUNT III

## Fraudulent Transfers
## Violations of the Uniform Fraudulent Transfers Act

47. The allegations of Paragraphs 1 through 46 are incorporated into this Count as if fully set forth herein.

48. Payments made to Defendants by Mansell were fraudulent transfers of funds made in furtherance of the Ponzi scheme.

49. As a Ponzi scheme, Mansell was insolvent from its inception.

50. Mansell made payments to Defendants when it was insolvent. By making these payments, Mansell either intended to incur, or reasonably should have known that it would incur, debts beyond its ability to pay the debts as they became due in violation of the Uniform Fraudulent Transfers Act.

51. Defendants' wrongful retention of receivership funds directly and proximately injured the Receivership Entities.

52. As a direct and proximate result of payments made to Defendants, the Receivership Entities suffered damages and have been rendered liable to investors, creditors, and other third parties.

## **PRAYER FOR RELIEF**

WHEREFORE, Pat Huddleston II, Receiver, requests and demands an entry of judgment in his favor:

1. That summons issue requiring Defendants to appear as provided by law to answer Plaintiff's Complaint;

2. That the Court award and enter judgment in favor of Plaintiff against the Defendants;

3. On Count I, that Plaintiff recover the demand amount from Defendants;

4. On Count II, that Plaintiff recover the demand amount from Defendants;

5. On Count III, that Plaintiff recover the demand amount from Defendants;

6. That all costs be taxed against the Defendants;

7. Such other and further relief as the Court shall deem just and proper.

[SIGNATURE ON NEXT PAGE]

Respectfully submitted this 9th day of October, 2009.

                                    THE HUDDLESTON LAW FIRM

                                    _/s/ Jennifer Snow_
                                    Jennifer Snow
                                    Georgia. Bar No. 288670
                                    *Attorney for Plaintiff*

THE HUDDLESTON LAW FIRM
1300 Ridenour Boulevard
Suite 200
Kennesaw, Georgia  30152
(770) 919-8003
(770) 874-0888 – facsimile
jsnow@huddlestonfirm.com